FILED

JUN 2 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALEKSANDR SKURTU, 1091128, )
2727 Hwy. K   ERDCC 5C 204 )
Bonne Terre, Mo. 63628 )
            PETITIONER, )
                        )
                        )
     VS. ) CASE NO. _____

DEPARTMENT OF HOMELAND SECURITY, &
UNITED STATES IMMIGRATION
New Orleans District-Oakdale Sub-Office
1010 East Whatley Road
Oakdale, La. 71463,

Case: 1:07-cv-01134
Assigned To : Unassigned
Assign. Date : 6/26/2007
Description: Habeas Corpus/2255

HONORABLE JOHN A. DUCK, JR. )
Immigration Judge )
UNITED STATES IMMIGRATION COURT )
Potosi, Mo. 63660 )
           RESPONDENT. )
                        )

## COMPLAINT

NOW COMES, ALEKSANDR SKURTU, in Pro-se, and files this complaint against all of the above Respondents that is name herein, and states the following reasons for this complaint:

1. Petitioner is not and illegal immigrated into this country. Petitioner came into this country legal and has his green card. Petitioner is not nor have he been convicted of any terrorist act or activity in this country. Petitioner's parents are both U.S. citizens now, along with rest of this family.

2. Petitioner entered a plea to of Tampering with a Motor Vehicle, he brought a stolen car. Petitioner did not know the car was stolen, but was still charge with Tampering. Petitioner got 7 years on it. Petitioner was also charge with 1 Count of Burglary of a business. There were several people involved in this action, Petitioner was a look out person, he did not try or get caught in the business.

RECEIVED

MAY 1 7 2007

NANCY MAYER WHITTINGTON, CLERK

Petitioner was informed on by one of the defendants in the case, and was arrested later on. Petitioner receive a 4 year sentence to run in concurrent with the 7 year sentence, making it 1 sentence of 7 years in prison.

3. Petitioner was only (15) Fifteen years of age when he enter the United States with his parents. Petitioner is now 23 years of age. Petitioner came to this country not knowing anybody and got caught up in the wrong group of people that took advantage of this Petitioners youth and being new to this country. Petitioner did not let his new country down, but his new country let him down by the citizens of this country for their own personal gains.

4. From the very start of this Petitioners Deportation Hearings and his trial if that is what the Respondents wants to call it, has refused to give this Petitioner any type of legal representation at any of the Petitioners hearings or at his trial. By the Respondents actions they denied this Petitioners his Constitutional Rights to "Due Process", and his rights to "Equal Protection" under the constitution which is a guaranteed, not just some words on a piece of paper that can be used when they need it. It is there for all people in this country and for their protection from unjust harm.

5. The hearing court gave Petitioner a legal sheet with names of legal counsel that might represent him in this legal matter. But none of the attorneys would help Petitioner in his legal matters. At that time the court and IJ should had appointed counsel to represent him in this matter. This was a erroneous error by this court to leave this Petitioner without counsel and start the hearings. This is a clear violation of the U.S. Constitution of the Fifth and Fourteenth Amendment guarantees of Due Process and Equal Protection of the law, and the Sixth and Four teenth Amendments, right to Counsel.

(3)

It is indisputably established that prisoners have substantial fundamental constitutional right of access to the court and such access must be adequate, effective and meaning. Without this right, all other rights a prisoner may have possess are illusory. Petitioner is just that an inmate and was not given that fundamental right to adequate, effective, and meaningful representation in this IJ court on any of this Petitioner hearings.

6. Petitioner was totally lost when it came time for the hearing. Petitioner has no legal knowledge and knew what to expect, nor has Petitioner ever had any trial experience or ever participated in a trial. IJ told Petitioner that he could begin his case. Petitioner was totally lost, he did not know how to present his case before Government or the Honorable Judge Duck. Petitioner did not know what to say, what to do, or where to start at. Both the Honorable Court and the Government took total advantage over this Petitioner for his total innocence in the lack of his legal knowledge and legal procedures. The whole hearing will show that the Petitioner was not able to defend himself properly. Both the IJ and the Governments disregard to Petitioners constitutional rights was a complete lack of adequate, effective, and meaningful representation by Respondents.

7. Petitioner trial skills was non-extinction. Petitioner could not even or had the knowledge to cross-examine any witnesses on his own behalf or against him. Petitioner did not have the skills or the knowledge to argue any of the evidence the government may or may not used against Petitioner. Petitioner did not know anything about discovery system, or how to go about getting the documents the government was planing to use against Petitioner, or even go about getting the documents that he would need to prove his case. Nor, did he even get to see the documents the government did use against Petitioner as evidence. The hearing court

(4)

failed to give this Petitioner any Due Process or Equal Protection under the U.S. Constitution. Petitioner was not able to get attorney at governments expense, but the government was allowed to get their legal expense paid by the taxpayers. Petitioner was denied the same affordable counsel as the government because of INS Policies and the Hearing Court. In do so, the hearing court denied this Petitioner his Due PROCESS AND Equal Protection under the U.S. Constitution, which guarantees the Petitioner the right to have the Assistance of Counsel for his defense. Petitioner is guaranteed by the U.S. Constitution from being deprived of Life, Liberty, or Property without Due Process of law. The Government, INS, and Hearing Court have all tried to deny this Petitioner his due rights to the U.S. Constitution to Due Process. In doing so, the Respondents has allowed a grave miscarriage of justice to this Petitioner.

8. Petitioner claims under the U.S. Constitution that he is guaranteed for a fair and impartial hearing and judge. Petitioner did not get this fair and impartial hearing when the government, INS, the Hearing Courts, and Judge denied him of his constitutional rights to have Assistance of Counsel for his defense.

9. Petitioner claims that there is no laws in the United States that can supersede this Petitioner's constitutional rights. There can not be a departmental policy that has the right to supersede the U.S. Constitution. But, Homeland Security and Immigration wants one to believe that they can overrule the constitutional rights of this Petitioner to have counsel to represented him. INS. policies states that the Petitioner can not have legal counsel at government expense, but INS and the government can have a legal team to use to deport Petitioner at taxpayers expense. This clearly is a double standard and a clear violation of the U.S. Constitution. Amendment VI states: "In all criminal prosecution the rights to have assistance of counsel for his defense." Petitioner is in prison now, the law

library is not one that carry all the different types of books. INS policies and laws are not in the prison library, Petitioner can not adequately, effectively, or meaningfully defend himself without the proper books, legal material, and etc. Petitioner had to have access to counsel in order to present his case. Without counsel Petitioner was not on a equal playing field with the government. INS and the U.S. Government have clearly denied this Petitioner his constitutional rights to have legal counsel to represented him in all of his deportation hearings.

10. In the next few lines the term "Department" refers to the Department of Homeland Security. This is how they wanted to be known in there briefs against this Petitioner: The Department" stated that "any errors that do exist in the decision, they are Harmless or Immaterial." Petitioner is in total disbelief that the "Department" can deny this Petitioner's constitutional rights to the U.S. Constitution which is a guaranteed to all the people in this country, it is not Harmless or Immaterial. The "Department" would not be saying it was Harmless or Immaterial, if it was happening to them of a family member, it would be a big deal then. In either case, the U.S. Constitution is the law of this land, and one that has to be enforce until it is change or abolished.

The Preamble of the constitution says it best. "We the People of the United States." The people that fought and died for this constitution would be appalled to hear the "Department" say that it is a Harmless or Immaterial error because we did not let this Petitioner have or receive his "Due Process" and "Equal Protection" under the U.S. Constitution. What a great travesty this would have been to remove or deport a person and take his freedom and his posterity from him and his family, just because the "Department" feels that the constitution is a burden to them, that they don't have to provide legal counsel to this Petitioner. The "Department" once to be able to snatch a person up and deport that person

(6)

without any type of "Due Process" or "Equal Protection." It isn't a Harmless or Immaterial error and they should have to be held accountable for this Petitioner's rights to the U.S. Constitution and not just to this Petitioner but to all the people in this country. It is a guaranteed that no one can or have the rights to denied a person, even the "DEPARTMENT."

11. Petitioner has no legal training, legal knowledge, trial expertise, or any knowledge of legal proceeding. Petitioner was not aware of what was expected from him, what Petitioner was to show the court, or what Petitioner was suppose to prove to the court for asylum, the IJ did not explain to the Petitioner what was expected of him, what Petitioner was to show the court, or what Petitioner needed to prove that he needed asylum.

Like wise Petitioner was unaware of what he was to show the court under (CAT) Convention Against Torture. So Petitioner did not or could not show the court or the IJ any of these things because Petitioner did not have the expertise to do so. If Petitioner had legal counsel these thing would have been shown to the court and to the IJ.

12. The IJ failed to asked or take in any consideration of the persecution, abuse, discrimination, torture, and any life threatening situations of Petitioner's parents, grandparents, and Petitioners aunts and uncles what they faced while they were in Moldova. The IJ also failed to note of any other reasons for this Petitioner's family members becoming refugees from Moldova. IJ as stated fail to asked the mother or the father about any abuses while the were on the stand and under oath, but the IJ asked this Petitioner specifically if he or any of his family members were ever Detained, Interrogated, convicted, sentenced to prison. Petitioner stated, "no." But how can the hearing court or the IJ expect this

Petitioner a young boy under the age of 15 years at that time to speak for his parents, and what they may or may not have gone threw. Petitioner does not know everything about his parents lives. Most parents try to hide things that they have gone threw, or not wanting their kids to know or worry about. Parents do just that in the U.S. that is what a parent is for, to protect their kids from harm. One can only imaging what it would be like to live in Moldova. These questions should have been asked to the parents not to a child, and should have been done by legal counsel or the court. But because of no legal counsel and because of the IJ didn't asked, the questions did not get answer to the parents when they were on the stand, so they went under answer. Very important questions that could have show this court and IJ why this Petitioner needed asylum, or meet the requirements under (CAT). The IJ failed to do his job and seek the answer that he needed to give a fair and impartial ruling to this Petitioner.

13. The Petitioner Father testify that "he don't know what would happen to his son because he lived here in the U.S. almost 8 years," father also stated; "I don't know what right now political in Moldova, you know. I don't--we don't know." It is plain to see Petitioner's father seem to have great concerns about the political system in Moldova, but the IJ did not do his job andgo into more detail of Petitioner's fathers concerns.

14. The Petitioner Mother testify that "if (he) Petitioner would be deported, we have to go back with him." Shows the love for her son, but it also sounds as she has fears about returning to Moldova. But no one bothered to go any further in the questioning about her fears she might have in returning to Moldova. But, if Petitioner had proper legal counsel both the Mother and the Father could have expressed their fears and concerns to the court and to the IJ. Where as nither

was given that chance because of no legal assistance for this Petitioner, and the IJ fail to do his job and to seek out the fears and concerns of both parents of the Petitioner.

15. Petitioner claims that the Government and the IJ conspired against this Petitioner in getting a verdict to deported Petitioner. The government first stated that this is not a particularly serious crime, but and few lines later stated in transcripts that unless the court determine they are. The IJ stated, "Tampering a motor vehicle won't be an Aggravated Felony." The major reasons for the deportation of a non-citizen, for a crime is it has to be a aggravated or violent nature of crime. This is not the case. The government and the IJ both has stated its not aggravated and nor serious crimes in nature. The verdict to deport is erroneous determination that does meet the findings of this court. The IJ stated one thing, the government stated one thing, and then the IJ ruled against this Petitioner. With this erroneous findings denied this Petitioner a fair and impartial hearings and trial.

16. The courts has stated: and applicant need not show torture on one of the five statutory grounds, rather: torture is defined as any act by which sever pain or suffering, whether physical or mental acquiescence of a public official or other persons acting in an official capacity, and the removal of a alien may not be, if the alien's life or freedom would be threaten in that country.

Petitioner would face religious persecution, discrimination, and intimidation by the government because he is a Christian and a Baptist. Physical abuse and discrimination would come from the townspeople. The paperwork Petitioner receive from the U.S. Dept. of Justice clearly shows the abuse this Petitioner will face

if he is return to Moldova. "Country Report on Human Rights Practies-2005 release Mar. 2006." Clearly shows the physically and or verbally abuses toward the Baptist was and is instigation of local Orthodox Priest. State sponsor religion. Petitioner would have been able to show this to the court if he had known this, or if he would had proper legal counsel, it would had been shown to the court, but the court already knew because they had a copy of the report them self, the IJ knew of this Petitioner's abuse he would be facing if he return back to Moldova, and still went against all the evidence and issue that erroneous findings and order the Petitioner to be deported.

17. Petitioner is not nor have been involved in any political parties or groups in Moldova while here in the U.S., but if he was return to Moldova, then Petitioner would become a member of the Christian Democratic People Party. He would face abuse, torture, imprisonment in the hands of the police and security agencies of Moldova. Petitioner would in deed face all types of abuse in their hands. The laws there prohibits such actions, but the government did not respect these prohibitions. Once again the court or the IJ would have known about this if Petitioner would had legal counsel to asked the proper questions, and the IJ had the report on Moldova, and it was in that report that would show the abused this Petitioner would be subject to if he was return back to this country. The IJ erroneous findings and the ordering Petitioner to be deported clearly shows that the IJ and the government denied this Petitioner his "Due Process" and his "Equal Protection" that is guarantee by the U.S. Constitution.

18. The Hearing Judge failed to take into consideration into this Petitioner's age at the time he entered into the United States, the age at the time of the crimes, and the Petitioner's age now. Petitioner does not have any family in

(10)

Moldova to go to, no place to live, no job, no money, not a thing. INS and Homeland Security plans are to fly Petitioner back to Moldova were he knows little about and let him out at the airport and tell him to have a wonderful life. If this action is not a abuse, and torture to this Petitioner by placing Petitioner life in danger, I don't know what is. But, that would be a clear violation of his constitutional rights and what the courts has defined as torture in several case by this government and the court placing Petitioner into a torture and abuse type type of a position with his life on the line.

19. The Hearing Judge is not only punishing this Petitioner in this case, but he is also punishing the Petitioner's parents by ordering Petitioner to be deported back to Moldova. Meanwhile, his family that are U.S. Citizens would live their lives in fear for their son, plus the idea of never seeing the Petitioner ever again is a torture to the Petitioner's and to the Petitioner's family. Unless Petitioner's parents go back to Moldova, then the government is forcing the Petitioner's parents to chose between there son and there freedom they have dream of, and then the government is subjecting the parents back to the country that they became refugees from, and place their lives in danger.

20. If Petitioner is deported, Petitioner faces the possibility of prison when returns. Petitioner could be detained for treason or any act that could be considered as a Breach of Allegiance to One's Government. Petitioner could be placed in prison for why his parents have fled the Republic of Moldova as refugees and it could be considered as a Breach of Allegiance to One's Government and be place toward this Petitioner. Not to mention the torture and abuse the parents would face if they would have to return to Moldova with there son, because the

government nor the IJ ever asked the parents why they left there country of Moldova to come to the United States. The IJ don't know what kinds of abuses that can be waiting on both the Petitioner and the Petitioner parents, it is the parents that came to the United States as refugees and bought their children with them. Now to put the parents in a situation to choose between their son or their freedom would be a mental torture to them.

21. Petitioner claims that the District Court has jurisdiction to consider this complaint because of the legal and constitutional questions regarding Petitioner's Rights to have Legal Counsel to represented him at his hearings and at the trial for removal.

22. Petitioner claims that the District Court has jurisdiction to consider this complaint because this Petitioner raised these constitutional issues before the Board of Immigration Appeals and they choose not to make any rulings on the constitutional issues. This leaves this Petitioner with no other choice but to brings these issues to the District Court.

23. Petitioner claims that the District Court has jurisdiction to consider this complaint because of the legal standards and constitutional questions can and should be reviewed de novo.

24. Petitioner at this time would also stated at this time that if needed Petitioner would asked for a trial by a jury.

Petitioner at this time would asked the Honorable Court for the following relief to correct the situation:

1. Petitioner would asked that the Order to Deport to be over turn and to

(12)

allowed Petitioner to remained here in the United States with his parents.

2. Petitioner would asked this Honorable Court to ruled the INS policy that states INS does not have to provide legal counsel to anyone that they are trying to deport be declared Unconstitutional and force the INS to provide counsel to those you can not attain proper counsel to represented them in there hearings.

3. Petitioner would asked this Honorable Court if the court is unable to reverse the IJ decision on deporting Petitioner that it would granted Petition by Petitioner and remanded it back to the IJ to started the actions over and to appoint Petitioner adequately, effectively, and meaningfully counsel to defend Petitioner in the deportation hearings.

WHEREFORE, Petitioner prays that this Honorable Court to grant Petitioner Complaint, and not to deport Petitioner back to Moldova, to a life of torture, abuse, persecution, discrimination, and intimidation. And to allow Petitioner to return to his family and live free from all fears.

                                                               Aleksandr Skurtu   1091128
                                                               2727 Hwy. K
                                                               Bonne Terre, Mo.   63628

(13)

STATE OF MISSOURI              )
                               ) SS.
COUNTY OF ST. FRANCOIS         )

    I ALEKSANDR SKURTU, of lawful age, being duly sworn, on this oath states that he is the Petitioner named above, that the facts stated herein are true according to his best information and belief of said Petitioner.

_____
ALEKSANDR SKURTU

Subscribed and sworn to before me on this _____ day of May 2007.

_____
Notary Public

CLARENCE C. HAMLIN
Notary Public - Notary Seal
State of Missouri - County of St. Francois
My Commission Expires Mar. 26, 2010
Commission #06397642

07 1134
**FILED**
JUN 2 6 2007
NANCY MAYER WHITTINGTON, CLERK